DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:    ROBERT B. SOBELMAN
        Assistant United States Attorney
        26 Federal Plaza
        New York, New York 10278
        (212) 637-2616

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                Plaintiff,

        -v.-

VARIOUS FIREARMS SEIZED ON OR
ABOUT JULY 7, 2023 FROM AN
APARTMENT LOCATED ON RIVERDALE
AVENUE, BRONX, NEW YORK AS SET
FORTH IN EXHIBIT A;

VARIOUS FIREARMS STORED IN A
PREMISES LOCATED IN BAINBRIDGE,
NEW YORK AS SET FORTH IN EXHIBIT B;

VARIOUS AMMUNITION SEIZED ON OR
ABOUT APRIL 3, 2024 AS SET FORTH IN
EXHIBIT C;

              Defendants-*in-rem.*

**VERIFIED CIVIL COMPLAINT FOR FORFEITURE**

24 Civ.   3583

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon information and belief, as follows:

## I.  JURISDICTION AND VENUE

1.      This action is brought pursuant to Title 18, United States Code, Section 924(d), by the United States of America seeking the forfeiture of the following:

a.  Various firearms seized on or about July 7, 2023 from an apartment located on Riverdale Avenue, Bronx, New York, and more particularly described in Exhibit A attached hereto (the "Riverdale Firearms");

b.  Various firearms located in a residence located in Bainbridge, New York, and more particularly described in Exhibit B attached hereto (the "Bainbridge Firearms");

c.  Various ammunition voluntarily surrendered on or about April 3, 2024 and more particularly described in Exhibit C hereto (the "Ammunition")

(a. through c., collectively, the "Defendants-*in-rem*").

2.      This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.      Venue is proper pursuant to Title 28, United States Code, Section 1395 because the Riverdale Firearms and the Ammunition are located within the judicial district for the Southern District of New York. Venue is also proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture of the Defendants-*in-rem*, including the Bainbridge Firearms, took place in the Southern District of New York.

4.      By this Complaint, the United States is now seeking the forfeiture of the Defendants-*in-rem*, and as set forth below there is probable cause to believe that the Defendants-*in-rem* are subject to forfeiture pursuant to Title 18, United States Code, Section 924(d).

## II.   PROBABLE CAUSE FOR FORFEITURE

5.      This action arises out of an investigation (the "Investigation") initiated in or about February 2023, by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") of STEPHEN RUBIN ("RUBIN") for violating Title 18, United States Code, Section 922(b)(2) (prohibiting any firearms dealer from selling or delivering any firearm to a person where the purchase or possession of the firearm by that person violates state law) and Section 933(a)(1) (prohibiting the shipping, transport, transfer, or disposal of any firearm to another person if the use, carrying, or possession of the firearm by the recipient would constitute a felony) (together, the "Subject Offenses").

6.      During the investigation, the ATF obtained a search warrant on or about July 6, 2023 (the "Search Warrant") to search the Subject's residence located on Riverdale Avenue, Bronx, New York (the "Riverdale Premises") for evidence of the commission of the Subject Offenses.

7.      The Search Warrant was executed on or about July 7, 2023 and the Riverdale Firearms were seized by the ATF.   A copy of the Search Warrant and Agent Affidavit are attached hereto as Exhibit D, and are incorporated by reference as if set forth fully herein.

8.      As set forth in detail in the Agent Affidavit, the Investigation revealed the following:

a.      RUBIN had a Federal Firearms License ("FFL")[1] as well as a New York state firearms license that permitted him to sell firearms only in specified locations or areas. Both these licenses list a business location in upstate New York, specifically, Bainbridge, New

---

[1] RUBIN's FFL has since been revoked.

York ("Bainbridge Premises"). (Ex. D, ¶ 8).

b.      RUBIN has never held a New York City Firearms Dealer's License, which is required to sell firearms in New York City. (Ex. D, ¶ 8).

c.      RUBIN previously held New York City permits that enabled him to store certain firearms, including rifles, shotguns, pistols, and revolvers, in New York City (the "NYC Permits"), but by June 2012, the NYC Permits had expired and, as of the date of the seizure of the Riverdale Firearms, he no longer had any permit to store firearms in New York City. (Ex. D, ¶ 8).

d.      On or about March 15, 2023, RUBIN sold firearms from the Riverdale Premises to an undercover agent working for the ATF ("UC-1") (the "March 15 Sale"). (Ex. D, ¶ 10).

e.      During the March 15 sale, RUBIN sold an AR-15 semi-automatic rifle with a detachable magazine, a pistol grip, and a flash suppressor (the "AR-15 Rifle"), ammunition for the AR-15 Rifle, and a 12-gauge shotgun to UC-1. (Ex. D, ¶ 10).

f.      As part of that sale, RUBIN completed a Firearms Transaction Record (ATF Form 4473) for the firearms that he sold to UC-1. (Ex. D, ¶ 10).

g.      The March 15 Sale violated New York Penal Law §§ 265.02 and 265.10, which prohibit possessing, manufacturing, transporting, disposing of or defacing an "assault weapon" in the state of New York, and penalizes such offenses as felonies. (Ex. D, ¶ 11).

h.      The March 15 Sale also violated New York Penal Law §§ 265.65 and 265.66, which prohibit the purchase or possession of a semi-automatic rifle by or the sale of a semi-automatic rifle to any individual who is not licensed to purchase or possess it. New York Penal Law § 265.20(22) defines an "assault weapon" to include a semi-automatic rifle such as the

4

AR-15 Rifle that RUBIN sold in the March 15 Sale. RUBIN was not authorized to sell to UC-1 the AR-15 Rifle, which was a semi-automatic rifle and an assault weapon, and UC-1 did not provide RUBIN with any information to lead RUBIN to believe that UC-1 was authorized to possess such an assault weapon or to purchase a semi-automatic rifle. (Ex. D, ¶ 11).

        i.       The March 15 Sale also violated 18 U.S.C. § 922(b)(2), which prohibits any firearms dealer from selling or delivering any firearm to a person where the purchase or possession of the firearm by that person violates state law, and 18 U.S.C. § 933(a)(1), which prohibits the shipping, transport, transfer, or disposal of any firearm to another person if the use, carrying, or possession of the firearm by the recipient would constitute a state or federal felony. This is because, as noted above, RUBIN sold an assault weapon that was a semi-automatic rifle to UC-1 where UC-1's possession or purchase of that firearm violates multiple New York state laws and constitutes a felony under state law. (Ex. D, ¶ 12).

        j.       RUBIN planned to make another sale of firearms to UC-1 at the Riverdale Premises on July 7, 2023 (the "July 7 Sale"). (Ex. D, ¶ 13).

        k.       As part of the July 7 Sale RUBIN indicated to UC-1 that he planned to sell him an AR-10 semi-automatic rifle with a detachable magazine and a pistol grip (the "AR-10 Rifle"). The AR-10 Rifle, like the AR-15 Rifle, is an "assault weapon" under New York Penal Law § 265.20(22). (Ex. D, ¶ 13).

        l.       During the March 15 Sale, UC-1 observed that there were approximately 60 to 70 boxes for long guns as well as ammunition in the Riverdale Premises. (Ex. D, ¶ 15).

        m.      Additionally, RUBIN informed UC-I that RUBIN lists for sale on

GunsAmerica.com[2] the firearms that he has stored at the Riverdale Premises. (Ex. D, ¶ 15).

9. On July 7, 2023, RUBIN sold to UC-1 the AR-10 rifle, ammunition for the AR-10 Rifle, and a quantity of high-capacity magazines at the Riverdale Premises. At no time during the sale to UC-1 did RUBIN conduct a National Instant Criminal Background Check System ("NICS") criminal background check as required by 18 U.S.C. § 922(t)(1).

10. Following the sale of the AR-10 Rifle, ATF Special Agents executed the Search Warrant at the Riverdale Premises.

## The Riverdale Firearms

11. During the execution of the Search Warrant on July 7, 2023, ATF Special Agents seized the Riverdale Firearms which consisted of 2,757 firearms from the Riverdale Premises, comprised of rifles, shotguns, pistols, and revolvers and more particularly described in Exhibit A. Additionally, Special Agents observed large quantities of ammunition at the Riverdale Premises (the "Riverdale Ammunition"), which was not seized at the time due to operational limitations in light of the unexpected and significant volume of firearms and ammunition found at the Riverdale Premises.

12. During the execution of the Search Warrant, ATF Special Agents also recovered records maintained by RUBIN related to his acquisition and disposition of firearms.

13. Federally licensed firearms dealers are subject to strict record keeping requirements. Title 18, United States Code, Section 923(g)(1)(A) requires "[e]ach licensed importer, licensed manufacturer and licensed dealer to maintain such records of importation,

---

[2] GunsAmerica.com is an online marketplace for buying and selling firearms and accessories. (Ex. D, ¶ 16).

shipment, receipt, sale or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." Title 18, United States Code, Section 922(m) makes it unlawful for "...any licensed dealer ... [to] knowingly make any false entry in, to fail to make an appropriate entry in, or fail to properly maintain, any record which he is required to keep pursuant to section 923...." Title 18, United States Code, Section 924(a)(1)(A) prohibits any person from "knowingly making any false statement or representation with respect to the information required by [18 U.S.C. Chapter 44] to be kept in the records of a person licensed under [18 U.S.C. Chapter 44]." Section 924(a)(1)(A) further prohibits making any false statements or representation in applying for a license under Title 18, United States Code, Chapter 44.

14.     Title 27, Code of Federal Regulations, Section 478.121(c) states that "[e]ach licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, whether temporary or permanent, of firearms and such records of the disposition of ammunition as the regulations contained in this part prescribe." Section 478.125(e) requires licensed dealers to maintain a record of firearms receipt and disposition, commonly referred to as the Acquisition and Disposition ("A&D") Record. The A&D Record is a logbook in which the licensed dealer records each firearm received—including the Manufacturer and/or Importer, model, serial number, type, and caliber or gauge— the date it was received, and identity of the person or entity from whom the firearm was received, including the name and address or name of federal firearms license number. When a firearm is disposed or otherwise transferred by the licensee, the licensee is required to record the date of the disposition, and the identity of the person or entity to whom the firearm was disposed. The regulation provides a prescribed format for the A&D Record.

7

15.     When a dealer is accurately and properly maintaining the A&D Record, every firearm received by the licensed dealer should be recorded in the A&D record. Every firearm transferred or disposed by the dealer should also be recorded in the A&D record with a corresponding disposition entry. If a firearm is recorded as an acquisition in the A&D Record and there is no accompanying disposition recorded, the firearm should be in the licensed dealer's inventory.

16.     One of the records seized by ATF Special Agents from the Riverdale Premises was RUBIN's A&D Record. Notwithstanding ATF's discovery of approximately 2,757 firearms at the Riverdale Premises, the A&D Record indicated that RUBIN had zero firearms in inventory as every firearm recorded in the A&D Record also had an accompanying disposition entry.

17.     ATF also seized two ledgers ("Ledgers") from the Riverdale Premises that were maintained by RUBIN. The Ledgers did not meet the requirements for an A&D Record as specified in 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e). Furthermore, the Ledgers indicated that RUBIN maintained an additional set of records in which he kept a record of his actual firearms inventory going back to the 1980s.

18.     An examination of the ledgers revealed that RUBIN acquired approximately 5,187 firearms that, according to the ledgers, had not been transferred or disposed, leaving over 2,000 firearms unaccounted for.

**The Bainbridge Firearms**

19.     Following seizure of the Riverdale Firearms, despite having previously represented to ATF that he had no firearms at Bainbridge Premises, RUBIN advised ATF that additional firearms were at his licensed premises in Bainbridge, New York.

20.     On October 16, 2023, pursuant ATF's regulatory authority under 18 U.S.C. § 923(g)(1)(B), and with RUBIN's consent, ATF conducted an examination of RUBIN's firearms inventory located at the Bainbridge Premises.   ATF physically inspected, but did not seize, approximately 3,006 firearms, at the Bainbridge location.   Of these, approximately 2,676 firearms were confirmed to have been recorded in the ledgers but were not recorded in RUBIN's A&D Record.   An additional 330 firearms were not recorded in any record.   A total of 445 firearms recorded in the ledgers were not present at the Bainbridge location and their location could not be identified by RUBIN, therefore, ATF filed a theft/lost report for those firearms.

### The Riverdale Ammunition

21.     As set forth above, the Riverdale Ammunition was identified upon executing the Search Warrant at the Riverdale Premises, however, operational limitations in light of the unexpected and significant volume of firearms and ammunition found at the Riverdale Premises, the Riverdale Ammunition was not seized at that time.

22.     On or about April 3, 2024, the Riverdale Ammunition was taken into custody by ATF Special Agents, with RUBIN's consent.

### RUBIN's Firearm Records

23.     A review of ATF licensing records confirmed the following:

a.     The Ledgers had not been shown to ATF personnel during the course of routine inspections conducted pursuant to 18 U.S.C. § 923(g)(1)(B).

b.     RUBIN often represented to ATF, both verbally and in writing, that he maintained no or only a minimal firearms inventory.

c.     In 2015, at the time Rubin renewed his FFL he recorded on his renewal application that in the prior three years he acquired 30 firearms and disposed of

9

30 firearms.

          d.      In 2018, at the time Rubin renewed his FFL, he recorded on his renewal application that in the prior three years he acquired 78 firearms and disposed of 78 firearms.  RUBIN also included a hand-written letter stating, "[w]e are not keeping inventory because of security concerns…[g]uns are ordered and sold quickly, transfers and guns ordered are taken care of immediately."

          e.      In 2021, at the time RUBIN renewed his FFL, he recorded on his renewal application that he acquired 275 firearms in the preceding three years and disposed of 208 firearms during that same time.

          24.      Additionally, RUBIN previously held an FFL in Stony Point, New York ("Stony Point FFL"), which was first issued in the early 1980s.  In 2010, as part of the relinquishment process of the Stony Point FFL, RUBIN attended a meeting with ATF personnel during which he advised an ATF Investigator that he "sold firearms on an 'order only' basis and never kept an inventory in stock."

          25.      As part of the relinquishment process of the Stony Point FFL, RUBIN turned in to ATF the A&D Record associated with the Stony Point FFL pursuant to 18 U.S.C. § 923(g)(4).  An examination of the A&D Record showed RUBIN recorded the acquisition of only 151 firearms since 1983, with all 151 firearms having a corresponding disposition recorded.

          26.      The Investigation determined from the records seized from the Riverdale Premises that RUBIN, for decades, maintained two sets of records for his firearms business: (a) the A&D Record which would purport to show no standing firearms inventory; and (b) the Ledgers, which he kept for himself, that showed his actual firearms inventory.

          27.      RUBIN's maintenance of these records, including the Ledgers and A&D

Record, frustrated and impeded ATF's inspection authority under 18 U.S.C. § 923(g)(1)(B) and obfuscated the true nature of RUBIN's business from the ATF, both with respect to his unlicensed operations from the Riverdale Premises and his maintenance of several thousand firearms in his inventory.

        28.      Title 18, United States Code, Sections 922(a)(1)(A) and 923(a) prohibit any person from engaging in the business as a dealer in firearms without being licensed by the Attorney General to do so.   As part of the application process, an applicant for an FFL must have premises from which he intends to conduct business under the proposed license.   *See* 18 U.S.C. § 923(d)(1)(E).   Further, the applicant must certify that the business to be conducted is not prohibited under state or local law in the place where the licensed premises are to be located; that the applicant will comply with state and local law applicable to the business; and that business will not be conducted under the license until the requirements of state and local law are met.   *See* 18 U.S.C. § 923(d)(1)(F).   27 C.F.R. § 478.41(b) provides that an applicant must apply for a separate license for each business and each place at which the applicant is to do business.[3]   27 C.F.R. § 478.50 provides that an FFL covers only the class of business or activity specified in the license at the address specified therein.

---

3 18 U.S.C. § 923(j) authorizes limited temporary business activities away from the licensed premises only at gun shows and events sponsored by national, state, or local organizations devoted to the collection, competitive use, or sporting use of firearms.   *See also* 27 C.F.R. §§ 478.50 and 478.100.

## III.  CLAIMS FOR FORFEITURE

### Forfeiture Under 18 U.S.C. § 924(d)
### (Firearms or ammunition involved in a violation of §§ 922, 923, 924 and 933)

29.     Paragraphs 1 through 28 of this Complaint are repeated and re-alleged as

if fully set forth herein.

30.     Title 18, United States Code, Section 924(d)(1) sets forth:

> Any firearm or ammunition involved in or used in any
> knowing violation of subsection (a)(4), (a)(6), (f), (g), (h),
> (i), (j), or (k) of section 922, or knowing importation or
> bringing into the United States or any possession thereof
> any firearm or ammunition ]in violation of section 922(l), or
> knowing violation of section 924, 932, or 933, or willful
> violation of any other provision of this chapter or any rule or
> regulation promulgated thereunder, or any violation of any
> other criminal law of the United States, or
> any firearm or ammunition intended to be used in any
> offense referred to in paragraph (3) of this subsection, where
> such intent is demonstrated by clear and convincing
> evidence, shall be subject to seizure and forfeiture[.]

(emphases added).

31.     Title 18, United States, Code, Section 924(a)(1)(A). Penalties:

> [whoever] knowingly makes any false statement or
> representation with respect to the information required by
> this chapter to be kept in the records of a person licensed
> under this chapter or in applying for any license or
> exemption or relief from disability under the provisions of
> this chapter...shall be fined under this title, imprisoned not
> more than five years, or both.

32.     Further, Section 924(d)(3) states:

> The offenses referred to in paragraphs (1) and (2)(C) of this
> subsection are—
>
> (C) any offense described in 922(a)(1) . . . where the firearm or
> ammunition intended to be used in any such offense is involved in
> a pattern of activities which includes a violation of any offense
> described in section 922(a)(1) . . . of [Title 18] . . .

12

(G) any offense under section 932 or 933.

33.     Section 922 provides that:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

(2) any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance

34.     Section 922(g) requires:

[e]ach licensed importer, licensed manufacturer and licensed dealer to maintain such records of importation, shipment, receipt, sale or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe.

35.     Section 933 provides that:

(a)It shall be unlawful for any person to-

(1) ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony[];

36.     The Riverdale Firearms and Riverdale Ammunition are forfeitable as being used or involved in violations of Title 18, United States Code, Sections 922(a)(1)(A), 922(b)(2), 923(g)(1)(A), 924(a)(1)(A) and 933(a)(1).

37.     As set forth above, none of the Riverdale Firearms were recorded in

13

RUBIN's A&D Record.  This constitutes a violation of 18 U.S.C. §§ 922(m) and 923(g)(1)(A). The Riverdale Firearms were also involved in a violation of 18 U.S.C. § 924(a)(1)(A) because RUBIN fabricated his A&D Record to falsely represent that the Riverdale Firearms were not part of his business inventory. Additionally, the Riverdale Firearms were involved in RUBIN's ongoing scheme to falsify his FFL applications in violation of 18 U.S.C. § 924(a)(1)(A) by misrepresenting his business premises to be in Bainbridge, when he was engaging in the business as a dealer in firearms from the Riverdale Premises.   The Riverdale Firearms were also involved in a violation of 18 U.S.C. § 922(a)(1)(A) because RUBIN engaged in the business as a dealer in firearms from the Riverdale Premises without applying for and receiving a license from the Attorney General.   Moreover, selling firearms from the Riverdale Premises is a violation of 18 U.S.C. § 922(a)(1)(A) as the RUBIN's FFL was valid only at the Bainbridge Premises. Finally, the Riverdale Firearms were involved in RUBIN's violations of 18 U.S.C. §§ 922(b)(2) and 933(a)(1) because they were part of the firearms inventory from which RUBIN sold assault weapons to UC-1 as part of the March 15 Sale and the July 7 Sale. Further, as noted, it was unlawful for RUBIN to keep his ATF records at the Riverdale Premises pursuant to 18 U.S.C. § 923(g)(1)(A).

38.     The Riverdale Ammunition was similarly used or involved in these same violations.   RUBIN sold ammunition to UC-1 during both the March 15 Sale and July 7 Sale, with both firearms transfers to UC-1 being in violation of 18 U.S.C. §§ 922(b)(2) and 933(a)(1).   The Ammunition was also involved in a violation of 18 U.S.C. § 922(a)(1)(A) because RUBIN sold ammunition in conjunction with his unlicensed dealing of firearms from the Riverdale Premises, as demonstrated by the March 15 Sale and the July 7 Sale.   Further, the Riverdale Ammunition was involved in RUBIN's ongoing scheme to falsify his FFL applications in violation of 18 U.S.C.

14

§ 924(a)(1)(A) by misrepresenting his business premises to be in Bainbridge, when he was engaging in the business as a dealer in firearms from the Riverdale Premises.

39.    As discussed, the Bainbridge Firearms were not recorded in RUBIN's A&D Record.   A total of 330 of the Bainbridge Firearms were not recorded in the A&D Record or the ledgers.   This constitutes a violation of 18 U.S.C. §§ 922(m) and 923(g)(1)(A).   Furthermore, the Bainbridge Firearms are forfeitable as being used or involved in violations of Title 18, United States, Code, Section 924(a)(1)(A) because RUBIN fabricated his A&D Record to falsely represent that the Bainbridge Firearms were not part of his business inventory.

40.    Additionally, in violation of 18 U.S.C. § 924(a)(1)(A), RUBIN falsified his applications for his Bainbridge FFL, which are renewed every three years, by representing that his business premises would be the Bainbridge Premises, when he was conducting business activity from the Riverdale Premises.   For instance, when RUBIN renewed his FFL with ATF in 2015, 2018, and 2021, RUBIN identified the Bainbridge Premises as his licensed premises.

41.    By reason of the foregoing the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 924(d) as firearms and ammunition involved in violations of Sections 922, 923, 924, and 933, and intended to be used in violations of Sections 922(a)(1)(A) and 933.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendants-*in-rem* and that all persons having an interest in the Defendants-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendants-*in-rem* to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
     May  9 , 2024

                    DAMIAN WILLIAMS
                    United States Attorney for the
                    Southern District of New York
                    Attorney for the Plaintiff
                    United States of America

By:    /s/ Robert B. Sobelman
        Robert B. Sobelman
        Assistant United States Attorney
        26 Federal Plaza
        New York, New York 10278
        Telephone: (212) 637-2616

## VERIFICATION

STATE OF NEW YORK           )
COUNTY OF NEW YORK          :
SOUTHERN DISTRICT OF NEW YORK   )

Greg Horowitz, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco and Firearms (the "ATF"), and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information and the ground of his belief are official records and files of the ATF, information obtained directly by the deponent, and information obtained by other law enforcement officials, during an investigation of alleged violations of Title 18 of the United States Code.

Greg Horowitz
Special Agent
Bureau of Alcohol, Tobacco and Firearms

17